O

# United States District Court
# Central District of California

| | |
|---|---|
| ALLA ANATOLYEVNA ZORIKOVA,<br><br>   Plaintiff,<br><br>   v.<br><br>KINETICFLIX, LLC,<br><br>   Defendant. | Case № 2:19-cv-04214-ODW (GJSx)<br><br>**ORDER GRANTING DEFENDANT'S MOTION FOR SUMMARY JUDGMENT [137]** |

## I.   INTRODUCTION

Plaintiff Alla Anatoleyvna Zorikova owns the copyright in a ballet instructional DVD. She brought suit against Defendant Kineticflix, LLC[1] for offering the DVD for rental as part of an online DVD rental service. Kineticflix now moves for summary judgment. (Mot. Summ. J. ("Motion" or "Mot."), ECF No. 137.) Having carefully considered the papers filed in connection to the instant Motion, the Court deemed the matter appropriate for decision without oral argument. Fed. R. Civ. P. 78; C.D. Cal. L.R. 7-15. For the following reasons, the Court **GRANTS** Kineticflix's Motion.

---

[1] Kineticflix previously asserted that the proper defendant is Elles, LLC, a California limited liability company doing business as KineticFlix.com. (Mot. Dismiss 3, ECF No. 30.) In any case, Defendant is referred to herein as "Kineticflix."

## II. FACTUAL BACKGROUND

Zorikova holds a valid copyright in the audiovisual work entitled "Ballet Class Viktor Kabaniaev" (the "Work"). (Def.'s Statement of Uncontroverted Facts ("SUF") 1–2, ECF No. 139; *see* Pl.'s Resp. SUF, ECF No. 149.)

Kineticflix was a web-based business that rented physical copies of fitness and dance DVDs by shipping the DVDs to its customers. (Decl. Joshua Parker ("J. Parker Decl.") ¶ 3, ECF No. 140 (describing Kineticflix as "a tiny version of Netflix when it first started"); Decl. Candee Parker ("C. Parker Decl.") ¶ 3, ECF No. 141 (same).) Once the customer was finished using the DVD, the customer would return it, and Kineticflix would then send the customer the next DVD on that customer's personally selected queue of DVDs. (Decls. J. & C. Parker[2] ¶ 6.)

Kineticflix's records indicate that between 2008 and 2014, some other copy of the Work was rented by Kineticflix customers a total of twenty times. (J. & C. Parker Decls. ¶ 4, Encl. D ("Ballet Class Viktor Kabaniaev Rental Record").) In 2017, Joshua and Candee Parker purchased Kineticflix, and sometime thereafter they noticed that although the Work was in Kineticflix's catalogue of available titles, they could not locate a DVD copy of the Work in the Kineticflix inventory. (J. & C. Parker Decls. ¶ 3.) So, in March 2019, Kineticflix purchased a copy of the Work from Amazon, a large online retailer, for $12.95. (*Id.* ¶ 3.) Kineticflix never rented out this copy; the only person who ever attempted to rent it was Zorikova herself, but Kineticflix never sent it to her. (SUF 9; J. & C. Parker Decls. ¶ 6.) Kineticflix still owns this DVD copy of the Work. (J. & C. Parker Decls. ¶ 7.)

Kineticflix asserts that it purchased a single DVD copy of the Work and that it has never copied the Work in any way. (Decls. J. & C. Parker ¶¶ 3–4, 6.) However, Zorikova disputes this, asserting that she has not distributed any physical copies of the Work in DVD format since 2014 and has instead made copies available only through

---

[2] The declarations of Joshua and Candee Parker are substantially identical, so the Court uses this convention to cite to both at once.

streaming and downloads. (SUF 3–4; J. & C. Parker Decls. ¶¶ 2–3, 6; Decl. Alla Zorikova ("Zorikova Decl.") ¶¶ 15, 24, 26, ECF No. 146.)

On May 15, 2019, Zorikova brought suit against Kineticflix, asserting claims for (1) copyright infringement, (2) vicarious copyright infringement, and (3) unfair competition under California law. (Compl., ECF No. 1.) The parties have already filed their pretrial documents, and trial is currently set for May 24, 2022.

### III. LEGAL STANDARD

A court "shall grant summary judgment if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). A disputed fact is "material" where the resolution of that fact "might affect the outcome of the suit under the governing law," and the dispute is "genuine" where "the evidence is such that a reasonable jury could return a verdict for the nonmoving party." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986). The burden of establishing the absence of a genuine issue of material fact lies with the moving party, and the moving party may meet this burden with arguments or evidence or both. *See Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986).

Once the moving party satisfies its burden, the nonmoving party cannot simply rest on the pleadings or argue that any disagreement or "metaphysical doubt" about a material issue of fact precludes summary judgment. *Matsushita Elec. Indus. Co., Ltd. v. Zenith Radio Corp.*, 475 U.S. 574, 586 (1986); *Cal. Architectural Bldg. Prods., Inc. v. Franciscan Ceramics, Inc.*, 818 F.2d 1466, 1468 (9th Cir. 1987). The non-moving party must show that there are "genuine factual issues that . . . may reasonably be resolved in favor of either party." *Franciscan Ceramics*, 818 F.2d at 1468 (quoting *Anderson*, 477 U.S. at 250) (emphasis omitted). Provided the moving party has satisfied its burden, the court should grant summary judgment against a party who fails to present evidence establishing an essential element of its claim or defense when

1  that party will ultimately bear the burden of proof on that claim or defense at trial. *See*
2  *Celotex*, 477 U.S. at 322.

3  In ruling on summary judgment motions, courts draw all reasonable inferences
4  in the light most favorable to the nonmoving party, refraining from making credibility
5  determinations or weighing conflicting evidence. *Scott v. Harris*, 550 U.S. 372, 378
6  (2007); *Hous. Rts. Ctr. v. Sterling*, 404 F. Supp. 2d 1179, 1183 (C.D. Cal. 2004).
7  However, "uncorroborated and self-serving" testimony will not create a genuine issue
8  of material fact. *Villiarimo v. Aloha Island Air, Inc.*, 281 F.3d 1054, 1061 (9th Cir.
9  2002) (quoting *Kennedy v. Applause, Inc.*, 90 F.3d 1477, 1481 (9th Cir. 1996)).
10 "Conclusory" or "speculative" testimony is likewise "insufficient to raise genuine
11 issues of fact and defeat summary judgment." *See Sterling*, 404 F. Supp. 2d at 1183.
12 The nonmoving party must provide more than a "scintilla" of contradictory evidence
13 to avoid summary judgment. *Anderson*, 477 U.S. at 251–52; *Addisu v. Fred Meyer,*
14 *Inc.*, 198 F.3d 1130, 1134 (9th Cir. 2000).

## IV.  DISCUSSION

16 The Copyright Act protects fixed original works of authorship, 17 U.S.C. § 102,
17 by granting to "copyright owners the 'exclusive rights' to display, perform, reproduce,
18 or distribute copies of a copyrighted work, to authorize others to do those things, and
19 to prepare derivative works based upon the copyrighted work," *Maloney v. T3Media,*
20 *Inc.*, 853 F.3d 1004, 1010 (9th Cir. 2017) (quoting 17 U.S.C. § 106). "The copyright,
21 in other words, gives the owner 'the right to control the work' . . . ." *Id.* (quoting
22 *Laws v. Sony Music Ent., Inc.*, 448 F.3d 1134, 1137 (9th Cir. 2006)). Here, the Work
23 at issue is an audiovisual work[3] consisting of ballet instructional material. Zorikova

---

[3] Under 17 U.S.C. § 101, "'[a]udiovisual works' are works that consist of a series of related images which are intrinsically intended to be shown by the use of machines, or devices such as projectors, viewers, or electronic equipment, together with accompanying sounds, if any, regardless of the nature of the material objects, such as films or tapes, in which the works are embodied." Zorikova appears to dispute that the Work is an audiovisual work (or that her copyright claim is limited to her rights in the audiovisual work) by pointing out that the Work "consists [of] audio, video, photography, [and] art work." (SUF 2.)

declares that she did not authorize or license Kineticflix to copy, rent, sell, download, display, or distribute the Work and argues that Kineticflix infringed her copyright by distributing copies of the Work to its customers as part of its DVD rental business. (Pl.'s Statement of Additional Material Facts ("AMF") 12, 19, ECF No. 148; Zorikova Decl. ¶¶ 20, 32.)

However, the Copyright Act provides that anyone who owns a lawfully made copy of a copyrighted work "is entitled, without the authority of the copyright owner, to sell or otherwise dispose of the possession of that copy." 17 U.S.C. § 109. This statute codifies the first sale doctrine, under which "a sale of a lawfully made copy terminates a copyright holder's authority to interfere with subsequent sales or distribution of that particular copy." *Adobe Sys., Inc. v. Stargate Software, Inc.*, 216 F. Supp. 2d 1051, 1054 (N.D. Cal. 2002) (quoting *Parfums Givenchy, Inc. v. Drug Emporium, Inc.*, 38 F.3d 477, 480 (9th Cir. 1994)). The first sale doctrine limits a copyright owner's exclusive right of distribution to the owner's "first voluntary disposition," and it "thus negate[s] copyright owner control over further or 'downstream' transfer to a third party." *Id.* (citing *Quality King Distrib. v. L'anza Rsch. Int'l, Inc.*, 523 U.S. 135 (1998)); *Brilliance Audio, Inc. v. Haights Cross Commc'ns, Inc.*, 474 F.3d 365, 371 (6th Cir. 2007) ("[T]he copyright holder controls the right to the underlying work, but the owner of a particular copy can dispose of it in any manner he or she wishes."). "The first sale doctrine has its roots in the English common law against restraints on alienation of property." H.R. Rep. No. 98–987, at 2899 (1984).

With this Motion, Kineticflix argues it is entitled to judgment as a matter of law because the first sale doctrine applies and is a complete defense to copyright infringement. As Kineticflix would bear the burden of demonstrating this affirmative defense at trial, it likewise bears the burden of establishing it at summary judgment. *Celotex*, 477 U.S. at 322.

### A. Kineticflix's Burden

As the Parkers each declare, Kineticflix operates its business by renting physical copies of DVDs to customers. It ships the DVD to the customer, and when the customer is finished using the DVD, the customer ships it back to Kineticflix. (Decls. J. & C. Parker ¶ 6.) Kineticflix purchased a DVD copy of the Work from Amazon in March 2019, and it attaches an order record from Amazon indicating that it paid $12.95 for the copy, that the copy was delivered on March 21, 2019 with two other workout DVDs, and that the copy was advertised as being in "New" condition when Kineticflix purchased it. (*Id.* Encl. C.) The Parkers further declare that Kineticflix never in fact rented its DVD copy of the Work to anyone (although the mere fact that it might have done so would not change the outcome of this Motion). (*Id.* ¶¶ 5, 7.)

The first sale doctrine gives the owner of a lawfully made copy the right "to sell or otherwise dispose of the possession of that copy." 17 U.S.C. § 109. Zorikova first argues that the very structure of Kineticflix's business gives rise to copyright violations by arguing that the term "or otherwise dispose" in 17 U.S.C § 109 does not include renting the copy. This argument is unavailing; accepting it would mean that the entire video and video game rental industry is based on systemic, repeated copyright infringement. No case law supports this assertion. Instead, case law that directly addresses video rental suggests the opposite. *See, e.g.*, *Columbia Pictures Indus., Inc. v. Prof'l Real Estate Invs., Inc.*, No. 83-2594, 1986 WL 32729, at *3 (C.D. Cal. Jan. 13, 1986) (observing that under first sale doctrine, "there is no issue" regarding whether defendants who purchased authorized copies of videodiscs had the right to rent them); *Columbia Pictures Indus., Inc. v. Aveco, Inc.*, 612 F. Supp. 315, 319 (M.D. Penn. 1985) ("The first sale doctrine gives the Defendants the right to rent the videocassettes they have purchased from the Plaintiffs."); *see also Rosebud Ent., LLC v. Prof'l Laminating LLC*, 958 F. Supp. 2d 600, 607 (D. Md. 2013) (noting that under first sale doctrine, "a library may lend an authorized copy of a book that it

lawfully owns without violating copyright laws"); *cf. Red Baron-Franklin Park, Inc. v. Taito Corp.*, 883 F.2d 275, 280 (4th Cir. 1989) (expressly noting that the plaintiffs in *Columbia Pictures Indus., Inc. v. Redd Horne, Inc.*, 749 F.2d 154 (3d Cir. 1984) were not challenging the legality of the defendant video cassette store operators' activity of "renting and selling video cassettes"). Moreover, the statute codifying the first sale doctrine goes on to expressly exempt certain types of renting, leasing, and lending, which clearly indicates that, as a general proposition, the first sale doctrine applies to the rental of a lawfully acquired copy—otherwise, there would be no need to exempt certain rentals from its reach. 17 U.S.C. § 109(b)(1)(A); *see R.J. Reynolds Tobacco Co. v. County of Los Angeles*, 29 F.4th 542, 553 (9th Cir. 2022) (instructing courts interpreting statutes to "give effect to each word and make every effort not to interpret a provision in a manner that renders other provisions of the same statute inconsistent, meaningless, or superfluous" (quoting *Shelby v. Bartlett*, 391 F.3d 1061, 1064 (9th Cir. 2004) (cleaned up))).

Kineticflix's evidence demonstrates that the first sale doctrine applies here. Under the first sale doctrine, provided that Kineticflix lawfully acquired a copy of the Work from Amazon that was initially made in a legal and authorized manner, it was permitted to rent that copy to downstream customers without further authorization from Zorikova, the copyright holder. Kineticflix's evidence shows this is exactly what it did. The burden thus shifts to Zorikova to demonstrate a genuine dispute of material fact or otherwise show Kineticflix is not entitled to this defense as a matter of law.

**B.    Zorikova's Burden**

Zorikova asserts three main legal and factual arguments in opposition, some more explicitly than others. First, she argues that the Work was in fact a computer program, and accordingly, the exemption to the first sale doctrine found at 17 U.S.C. § 109(b)(1)(B)(i) applies. (Opp'n 8–9.) Second, she argues (or, more accurately, suggests) that Kineticflix made copies of the Work in connection with renting the

Work to customers, thus infringing the copyright. (Opp'n 3–4.) Third, she argues that the Work contains photography and artwork elements whose copyrights Kineticflix infringed in making the Work available for rental. (SUF 2.) For the reasons that follow, these arguments are insufficient to meet Zorikova's burden.

*1. The computer software exemption to the first sale doctrine does not apply.*

Zorikova argues—or at least, the Court construes Zorikova's papers as offering the argument—that the Work qualifies as "computer software" and is therefore exempt from the first sale doctrine under 17 U.S.C. § 109(b)(1). (Opp'n 8, ECF No. 145.) Zorikova asserts that the Work is computer software "based on the searchable menu embedded in the Work[] and is an electronic representation of moving visual images (video) in the form of encoded digital data and incorporates analytical software which enables capabilities such as video search, object tracking and intrusion detection." (*Id.*)

The computer software exemption was introduced to the Copyright Act as part of the Computer Software Rental Amendments Act of 1990, and its purpose was to prohibit anyone in possession of computer software from renting it for commercial advantage unless the copyright owner authorized them to do so. S. Rep. No. 101-265 § V (1990). However, the drafters of the computer software exemption were specifically concerned with protecting computer programs that are easy to copy, and therefore, the exemption "does not apply to . . . a computer program which is embodied in a machine or product and which cannot be copied during the ordinary operation or use of the machine or product." 17 U.S.C. § 109(b)(1)(B)(i). This exception to the exemption clearly and unquestionably applies to DVDs with interactive features such as the Work at issue. To the extent any of the interactive features Zorikova points out constitutes computer software, the product in which that computer software is embodied—the DVD—cannot be copied during its ordinary

operation or use in a DVD player. *See id.* Thus, it is not the type of "computer software" protected by the Copyright Act's exemption to the first sale doctrine.

### 2. *Zorikova fails to raise a genuine dispute about whether Kineticflix made infringing copies of the Work in renting it to customers.*

Zorikova next argues, both directly and indirectly, that Kineticflix did not in fact purchase a physical DVD copy of the Work, but instead purchased a digital copy of the Work and then made unauthorized copies of the Work which it then rented to its customers. (Opp'n 3–4.) The evidence Zorikova presents in support of this assertion, however, would not suffice to allow reasonable trier of fact to find that Kineticflix made copies. Accordingly, Zorikova fails to show that this factual issue is in genuine dispute.

First, Zorikova declares that since 2016, the Work has been available on Amazon only digitally, as a streaming video and as a downloadable file. (Zorikova Decl. ¶ 26; *cf. id.* ¶ 24 (Zorikova asserts she has not sold any hard copies of the DVD since "2012–2014 or earlier").) In support of this assertion, she submits two screenshots from the Amazon product listing for the Work suggesting the Work is available on Amazon as a streaming video and as a downloadable file and not in any physical medium. (*Id.* Ex. G.)

For two reasons, however, this evidence does not constitute evidence that a physical copy of the DVD was not available on Amazon in March 2019, when Kineticflix purchased its copy. First, Zorikova fails to state when she pulled the screenshots from Amazon; unless the screenshots are from in or around March 2019, they are irrelevant to whether any DVD copy of the Work was available on Amazon in March 2019. Second, the screenshots relate only to the Amazon Prime Video listing for Ballet Class Victor Kabaniaev. Zorikova submits nothing suggesting that this is the only page on Amazon from which a copy of the Work can be purchased, or that in March 2019 no DVD copy of the Work (new or used) was available anywhere else on Amazon (whether offered by Amazon itself or by a third-party seller).

1. Moreover, Zorikova submits no additional authenticating declaration, such as a statement that she thoroughly searched Amazon at the appropriate time. Nor does Zorikova propose to submit any of this additional material. Without it, a trier of fact could not reasonably infer from Zorikova's screenshots that a DVD of the Work was available nowhere else on Amazon in March 2019.

Aside from the evidence regarding what Amazon may or may not have offered, Zorikova submits no evidence suggesting that Kineticflix in fact received a digital copy of the work from Amazon from which it made additional copies, or that Kineticflix received a physical copy from Amazon and then made copies of that copy. Such evidence might have included records requested or subpoenaed from Amazon, internal Kineticflix communications or similar records obtained by discovery, or deposition admissions from the Parkers, but Zorikova submits no evidence of any of these types.

In examining the record for any further evidence that might place this issue in genuine dispute, the Court notes that Zorikova generally stops short of expressly asserting that Kineticflix in fact made unauthorized copies, instead couching her assertion each time in a series of alternative verbs. (*See, e.g.*, Compl. ¶ 35 ("Defendants infringed the copyrights in Plaintiff's creative works by reproducing, distributing and/or publicly displaying the works by and through various piracy web site without proper approval or authorization of Plaintiff."); Zorikova Decl. ¶ 20 ("I did not authorize Defendants' copying, renting, selling, downloading, displaying or distributing of [the] Work.").) In all, Zorikova's showing amounts to no more than a "scintilla" of evidence of the possibility that Kineticflix may have copied the Work, and she accordingly fails to show this factual question is in genuine dispute. *Anderson*, 477 U.S. at 251–52. Instead, the only two people with personal knowledge of the matter, the Parkers, have declared under penalty of perjury that Kineticflix "purchased a DVD copy of the Work online from Amazon" and that they "never

duplicated any of the DVDs [they] purchased" on Kineticflix's behalf and that doing so simply was not part of their business model. (Parker Decls. ¶¶ 3, 6.)

By filing this Motion and meeting its initial burden, Kineticflix called on Zorikova to marshal her evidence and demonstrate to the Court that she will have enough evidence at trial to defeat Kineticflix's first sale doctrine defense. Zorikova's response to this call is insufficient. She refers only to incomplete suggestions of copying and the possibility that she will elicit testimony at trial that shows that some sort of copying took place. This sort of speculation is insufficient to defeat a motion for summary judgment.[4,5] *Sterling*, 404 F. Supp. 2d at 1183.

> 3. *To the extent the Work consists of photographic or artwork elements, Kineticflix's use of those elements is outside the scope of the Complaint, and, in any case, is within the limited display rights provided by the first sale doctrine.*

Zorikova's final argument appears to be that the Work is more than just an audiovisual work and contains photographic and artwork elements, and that Kineticflix infringed the copyrights in those elements when it made the Work available for rental on its website. (*See* SUF 2.) This argument, like the first two, does not defeat Kineticflix's Motion.

The first and most fundamental problem with this argument is that it exceeds the scope of Zorikova's Complaint. Zorikova introduced the "Ballet Class Victor

---

[4] In the same vein, Zorikova also suggests that Kineticflix made the Work available for streaming. (*See* AMF 3 (accusing Kineticflix of "publicly display[ing]" the Work); Opp'n 3 (same).) This argument requires little analysis. The Parkers clearly declare that their DVD rental business did not involve any streaming, (Parker Decls. ¶ 6 ("We have never shown any of the DVDs or displayed their content in any way. We do not offer any sort of streaming service.").) Zorikova fails to proffer any evidence whatsoever that Kineticflix ever streamed the Work.

[5] Zorikova's papers might be read as suggesting that Kineticflix's copy was not "lawfully made" under 17 U.S.C. § 109(a) because Amazon sold Kineticflix a DVD copy of the work that it, Amazon, made without authorization or otherwise obtained unlawfully. But this is not and has never been Zorikova's theory of the case. To pursue this theory of the case, Zorikova would have needed to join Amazon as a party to this action, or, at the very least, conduct significant third-party discovery on Amazon on this issue.

Kabaniaev DVD" in the very first paragraph of her Complaint as an audiovisual work and referred to it as such throughout her pleading. (Compl. ¶ 1.) She attached an exhibit showing a copyright registration in the Ballet Class Victor Kabaniaev instructional video. (Compl. ¶ 33, Ex. E.) Nowhere in the Complaint did Zorikova allege a separate protectable interest in any individual photography or artwork element. Thus, by opposing Kineticflix's Motion by pointing to copyrights other than that in the audiovisual work, Zorikova seeks to widen the scope of her pleadings.

The Ninth Circuit has held "when issues are raised in opposition to a motion to summary judgment that are outside the scope of the complaint, the district court should construe the matter raised as a request pursuant to [R]ule 15(b) of the Federal Rules of Civil Procedure to amend the pleadings out of time." *Apache Survival Coalition v. United States*, 21 F.3d 895, 910 (9th Cir. 1994) (cleaned up). Rule 15(b)(1) provides that "[t]he court should freely permit an amendment when doing so will aid in presenting the merits and the objecting party fails to satisfy the court that the evidence would prejudice that party's action or defense on the merits." Fed. R. Civ. P. 15(b)(1). In applying this rule, courts have found that "[w]hen a court permits a plaintiff to argue theories not introduced in the complaint nor made known to defendant prior to the close of discovery, the defendant will not be on notice that it must defend against such theories and will thus be prejudiced." *Barrett v. JP Morgan Chase Bank*, No. 14-cv-2976 DMS (WVG), 2016 WL 3523046, at *4 (S.D. Cal. June 27, 2016); *see Coleman v. Quaker Oats Co.*, 232 F.3d 1271, 1294 (9th Cir. 2000) (forbidding employee plaintiffs from opposing summary judgment with a disparate impact theory when plaintiffs initially alleged only disparate treatment and complaint therefore failed to place defendants on notice that they would have to defend against this theory).

Here, Zorikova cannot widen the scope of her pleadings at summary judgment by referring to intellectual property she did not clearly allege in her Complaint

because Kineticflix was not on notice and has not had the opportunity to conduct discovery on other copyrightable elements.

Second, and in the alternative, the first sale doctrine includes "limited display rights." *Bryant v. Gordon*, 483 F. Supp. 2d 605, 612 (N.D. Ill. 2007). Specifically, the owner of a copy is permitted to "display the copy publicly, either directly or by the projection of no more than one image at a time, to viewers present at the place where the copy is located." 17 U.S.C. § 109(c). Here, the public display of the copy is no more than a digital still shot of the front cover of the DVD, presented on the title listing page for the Work on Kineticflix's website. Displaying the front cover of the DVD in this way is no more copyright infringement than a video rental store displaying its physical copy of a videocassette on the shelf to make it available for rental, an act which, as far as this Court is aware, has never been held to constitute copyright infringement.[6]

///
///
///
///
///
///
///
///

---

[6] Though not specifically addressed by the parties, the doctrine of fair use may also provide a defense for any putative infringement Kineticflix committed by displaying the cover of the DVD on a product listing page. The fair use defense confers a privilege on those other than the copyright owner "to use the copyrighted material in a reasonable manner, without [the owner's] consent, notwithstanding the monopoly granted to the owner." *Marcus v. Rowley*, 695 F.2d 1171, 1174 (9th Cir. 1983) (citing *Rosemont Enters., Inc. v. Random House, Inc.*, 366 F.2d 303, 306 (2d Cir. 1966), *cert. denied*, 385 U.S. 1009, (1967)). The fair use doctrine is "an equitable rule of reason, which permits courts to avoid rigid application of the copyright statute when, on occasion, it would stifle the very creativity which that law is designed to foster." *Stewart v. Abend*, 495 U.S. 207, 236 (1990) (internal quotation marks omitted).

## V. CONCLUSION

For the reasons discussed above, the Court **GRANTS** Kineticflix's Motion for Summary Judgment. (ECF No. 137.) The Court hereby **VACATES** the Final Pretrial Conference, the trial, and all other pretrial dates and deadlines. The Court will issue Judgment consistent with this Order.

**IT IS SO ORDERED.**

April 28, 2022

_____
**OTIS D. WRIGHT, II
UNITED STATES DISTRICT JUDGE**